**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Brian Bash, Trustee,** | ) | **CASE NO. 1:12 CV 987** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Textron Financial Corp.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Proposed Conclusions of Law Recommending that District Court Deny in Large Part Defendant Textron Financial Corporation's Motion to Dismiss Trustee's Second Amended Complaint ("R&R"). This is an adversary proceeding arising out of the bankruptcy filing by Fair Finance Company. For the reasons that follow, the recommendation that defendant's motion to dismiss be denied is ACCEPTED. In addition, the Court ACCEPTS the R&R's recommendations regarding damages. To that end, the Court will not reach Textron's damages argument with regard to Ohio's UFTA at this time, but holds that

1

the Trustee may not recover punitive damages.

**FACTS**

This is an adversary proceeding arising out of the bankruptcy filing by Fair Finance Corporation ("Fair Finance"). In this matter, the Trustee seeks to recover from two financial institutions for their alleged role in the Ponzi scheme perpetrated by the now convicted felons that purchased and operated Fair Finance. The Court previously granted defendant Textron Financial Corporation's motion to dismiss the complaint. In connection with that motion, Textron raised a number of challenges, including that the *in pari delicto* defense bars the Trustee's claims and that the Trustee lacks standing. Textron also argued that the Trustee fails to state a claim for civil conspiracy because the complaint contains insufficient allegations as to the "malicious agreement" element. This argument, however, was raised in Textron's Objections only in a passing footnote. This Court accepted Textron's argument on the basis of the *in pari delicto* defense and did not reach Textron's alternative arguments. The other financial institution defendant, *i.e.*, Fortress Credit Corporation, reached a settlement with the Trustee.

Subsequently, the Trustee appealed to the Sixth Circuit and the court reversed this Court's decision with respect to Textron's motion to dismiss. On appeal, Textron argued in support of the District Court's decision on the basis of *in pari delicto*. In addition, Textron argued that the Trustee lacks standing. Textron made this argument even though this Court did not reach the issue. Textron did not, however, expressly argue that dismissal was warranted based on the failure of the Trustee to sufficiently allege the existence of a "malicious agreement." On remand, the Trustee filed a second amended complaint ("SAC") and Textron again moves to dismiss. The Trustee opposes the motion. This Court referred this matter to the

Bankruptcy Court for pretrial supervision. The Bankruptcy Court filed an R&R recommending that the Court deny Textron's motion to dismiss. Textron and the Trustee have filed objections to the R&R.

**ANALYSIS**

1. Textron's objections

Textron moves to dismiss the civil conspiracy claim on the grounds that the complaint fails to allege sufficient facts to establish a "malicious agreement." The Bankruptcy Court recommends rejecting this argument based on the law of the case doctrine. Textron objects to the recommendation on the grounds that this issue was never decided by this Court nor was it argued or addressed by the Sixth Circuit. According to Textron, the law of the case doctrine applies only to issues "actually decided" in the matter. In response, the Trustee claims that the Sixth Circuit did in fact address the issue. The Sixth Circuit's opinion describes the allegations as follows:

> [T]he Trustee asserts that Textron, in exchange for hundreds of thousands of dollars in interest and fees, not only turned a blind eye to Durham and Cochran's fraudulent behavior, but actually assisted the two Indiana businessmen in looting the Debtor and transforming its once profitable factoring operation into a front for a Ponzi scheme.

By characterizing the allegations as such, the Sixth Circuit necessarily determined that the Trustee stated a claim for civil conspiracy. In addition, the Trustee notes that the Sixth Circuit indicated that "a claim survives [a motion to dismiss] if its factual allegations are enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Thus, in upholding the claim, the Sixth Circuit must have determined that the allegations satisfy the 12(b)(6) standard, which includes a determination that the Trustee properly alleges a "malicious agreement." And, while the Trustee filed a SAC, the parties agree

3

that the allegations in the amended complaint are by and large identical to those in the SAC. The Trustee further argues that Sixth Circuit expressly identified which issues this Court may consider on remand, including noting that this Court may consider two alternative theories for invalidating the 2002 security interest. The Sixth Circuit did not, however, indicate that this Court may consider whether the civil conspiracy claim survives a 12(b)(6) challenge based on the sufficiency of the allegations. As such, the Court is foreclosed from addressing this issue now.

> The doctrine of law of the case provides that the courts should not reconsider a matter once resolved in a continuing proceeding. The purpose of the law of the case doctrine is to ensure that the same issue presented a second time in the same case in the same court should lead to the same result. For a prior decision to control, the prior tribunal must have actually decided the issue. A position that has been assumed without decision for purposes of resolving another issue is not the law of the case. An alternate holding, however, does not establish law of the case. Unlike claim preclusion, the law of the case does not apply to issues that a party could have raised, but did not. The law-of-the-case doctrine is a prudential practice; a court may revisit earlier issues, but should decline to do so to encourage efficient litigation and deter indefatigable diehards.

*Howe v. City of Akron*, 801 F.3d 718, 739-40 (6th Cir. 2015).

The law of the case doctrine precludes reconsideration unless one of three "exceptional circumstances" exists. *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan,* 418 Fed. Appx. 430, 434 (6th Cir. 2011). "These are (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Id*.

Here, the Court is not convinced that the law of the case doctrine precludes review of Textron's argument. This Court did not address whether the civil conspiracy claim sufficiently alleges a "malicious combination." Nor does the Trustee point to any specific instance in the

4

parties' briefing before the Sixth Circuit, wherein this issue was raised.  Other than a generalized summary of the Trustee's allegations in the amended complaint, the Trustee fails to point to any specific instance in which the Sixth Circuit addressed whether the amended complaint sufficiently alleged a malicious combination.  Therefore, the Court is not convinced that the law of the case doctrine precludes judicial review.

In the alternative, the Trustee argues that Textron waived the right to present this argument.  According to the Trustee, the pervious R&R recommended that the Court find that the amended complaint stated a claim for civil conspiracy.  Despite filing lengthy and detailed objections, Textron raised the issue of the sufficiency of the pleadings only in a passing sentence contained in a footnote. Nor did Textron develop the argument in any fashion.  Rather, the Trustee "incorporated by reference," portions of other briefing.  According to the Trustee, the Sixth Circuit requires more from an objecting party, and raising an undeveloped argument in a footnote waives appellate review.  Although this argument has some appeal, the Court notes that it is entirely inconsistent with the Trustee's argument that the Sixth Circuit expressly addressed the very issue that Textron allegedly waived.  Regardless, the Court finds that it need not reach the issue of waiver because the allegations in the SAC state a claim for civil conspiracy in any event.

The R&R recommends that the Court find that SAC alleges a claim for civil conspiracy. The R&R points out that the SAC complaint contains the following allegations:'

- Textron provided funding for Durham and Cochran to acquire Fair Finance and was Fair Finance's "working capital lender from January 2002 to July 2007;"

- Textron was aware of both the insider loans and the nature of the Ponzi scheme;

- Despite Textron's knowledge of the insider loans and the general nature of the

5

Ponzi scheme, Textron continued to provide funding to Fair Finance because it
was a profitable venture for Textron;

- Textron agreed to allow Fair Finance to postpone making material disclosures to
investors regarding the insider loans; and

- Despite Fair Finance's multiple instances of default, Textron agreed to ten
extensions of the loan.

Based on these and other allegations, the Court agrees with the Bankruptcy Court that the Trustee sufficiently alleges a "malicious combination." Under Ohio law, the "malicious combination" element "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996). "With respect to the level of agreement that must be established, [the Sixth Circuit] has stated that all that must be shown is that ... the alleged coconspirator shared in the general conspiratorial objective...." *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 538 (6th Cir. 2000)(internal citation and quotation omitted).

Here, the allegations in the SAC as cited in the R&R sufficiently allege a "malicious combination." All that need be alleged is that the parties had a "common understanding" to commit an unlawful act. Here, the unlawful act is the Ponzi scheme perpetrated against unwitting investors. In addition to the aforementioned allegations, the Trustee cites to documentary evidence in the SAC. By way of example, the Trustee alleges as follows:

- On November 13, 2003, a Textron Senior Vice President of Portfolio
Management..., wrote to Durham and Cochran that he had discussed refinancing
the Textron Loan with Textron's Credit Committee, and:

    > To be honest, the only issue was the [Insider Loans] and how the [V-Note]
    > program at Fair Finance was used as a piggy bank to finance these other
    > non-core affiliates. The [Credit Committee] believes that its [sic] wrong
    > to use these [V-Notes] funds anything but for the growth and profitability
    > of Fair Finance and not to fund losses of the affiliates. In today's world of

> Sarbanes-Oxley, predatory lending and recent court rulings (Lehman Brothers), they are concerned that the issue with us knowing that the [V-Notes] proceeds are going else where could come back to haunt us. The [Credit Committee] is currently litigating a suit that we have been dragged into as a result of the same. (SAC ¶ 227).

- Despite knowing the state of the Inside Loans Textron and Durham agreed to postpone the additional disclosures to avoid detection by investors or the Ohio Division of Securities. A January 5, 2004 internal Textron memorandum provides:

  > Management has requested that we agree to postpone the requirement for updating the [V-Note] circular until June, 2004, which is the time of year, each year, that changes are considered in conjunction with Fair's latest financial statements. Management feels that an 'interim' update to the circular could send an unsettling message to the market. After careful evaluation, [Textron's Asset Backed Loan Division] supports management's request. (SAC ¶¶ 334-35).

- Subsequently, a Textron employee sent an internal memorandum suggesting that Textron "exit this [credit] facility at the earliest opportunity" because a number of issues "trouble[d]" him about Fair Finances' year 2003 financial statements, including, among others, the late date at which the auditor report was received, the $57.5 million in Insider Loans, and the fact that if Fair Finance lost the ability to issue V-Notes, Fair Finance would not survive. (SAC ¶353).

In addition to the foregoing allegations, the Trustee alleges that Textron issued 10 extensions of the loan after Textron knew of all of the serious financial problems facing Fair Finance. The Trustee expressly alleges that Textron knew from discussions with Durham that Durham was considering firing its second set of auditors in order to avoid receiving an adverse audit opinion. As such, the Trustee claims that Textron and Durham planned to issue financial statements certified only by Durham. (SAC ¶ 402).

On the whole, the Court finds that the foregoing allegations adequately allege the "malicious combination" element of a civil conspiracy claim under Ohio law. In sum, the SAC contains allegations suggesting that Textron learned of the serious financial irregularities and

7

knew that the business would collapse without the V-Note financing. Nonetheless, Textron agreed to postpone the requirement that Fair Finance issue updated V-Note circulars and further planned with Durham to issue financial statements certified only by Durham in that the auditors were likely to issue an adverse audit opinion. This, coupled with the Trustee's allegations that Textron knew that the collapse of the V-Note aspect of Fair Finance would render it unable to continue as a going concern, demonstrate a "common understanding or design, even if tacit, to commit an unlawful act," namely the perpetuation of the V-Note Ponzi scheme.[1]

Textron further argues that the allegations in the SAC are simply not plausible. By way of example, Textron notes that it had required expanded disclosures as part of the 2004 loan modification. Thus, it was Textron's own requirements that it waived when agreeing to "delay" Fair Finance's issuance of an updated V-Note circular. While this may be true, the Court does not find that it renders the civil conspiracy claim implausible. Arguably, the fact that Textron required the disclosures in the first place demonstrates the importance thereof. The fact that Textron agreed to delay the issuance in order to avoid "send[ing] an unsettling message to the market" simply does not equate to the *lack* of a civil conspiracy claim as a matter of law. At the end of the day, Textron argues that there are simply no plausible allegations suggesting that

---

[1] The Court is not persuaded by Textron's reliance on *Aenta*, 219 F.3d at 539-39. As an initial matter, that case proceeded to trial and the Sixth Circuit addressed the sufficiency of the evidence, not the pleading requirements for asserting a civil conspiracy claim. Moreover, as set forth herein, the allegations in this case, when taken as true, do assert that Textron reached a "common understanding" regarding the perpetuation of obtaining additional V-Note financing, where the proceeds of that financing were being used to dramatically increase that amount of non-performing insider loans.

8

Textron "postponed the disclosures *so that* Durham and Cochran could loot V-Note investors."
The Court disagrees. As set forth above, the Trustee alleges that Textron knew of the ever-mounting balance of loans to insiders and that Fair Finance would collapse without the V-Note investors. The fact that Textron and Durham agreed to delay disclosures until a point in time in which the disclosures might go "unnoticed," creates a plausible inference at this point in the proceedings. As noted in the R&R, Textron is free to challenge the evidence that the Trustee produces at a later stage in the proceedings. But, for purposes of the instant motion, the Court agrees with the Bankruptcy Court that the Trustee's civil conspiracy allegations satisfy Rule 12(b)(6).[2]

Textron further argues that the SAC fails to state a claim because Textron "sought and received from [Fair Finance] a legal opinion from [Fair Finance's] outside counsel that [Fair Finance's] V-Note program complied with Ohio law." In support of this argument, Textron cites to SAC 325-26 and Exhibit J. A review of those citations, however, flatly contradicts Textron's own argument. In the SAC, the Trustee alleges:

- In advance of the Refinance, Textron demanded in approximately October 2003, that Durham produce a legal opinion stating that the offering circular adequately disclosed the Insider Loan to FHI under Ohio and federal law (SAC ¶ 326); and

- In or around December 2003, Durham provided Textron with a legal opinion from Riley Bennett & Egloff LLP that declined to opine that the offering circular adequately disclosed the Insider Loans (SAC ¶ 326).

---

[2] Other arguments raised by Textron, including Textron's explanations regarding the June 2006 internal memorandum do not preclude the civil conspiracy claim. Although Textron offers other "views" of contents of the document, at this point, the Court must view the well-pled allegations in the light most favorable to the Trustee.

9

While the lawyers opined that there was no misrepresentation or concealment in the offering circular, they went on to note in relevant part as follows:

> Because of the fact-sensitive and speculative nature of any determination the sufficiency of the disclosures in question, we are unable to provide an opinion as to that matter based upon the existing language of the Offering Circular. However, it is our opinion that, if Offering Circular is revised to include the language set forth in Exhibit A of this letter, the disclosures made in the Offering Circular regarding the loans to Holdings will be sufficient under Section 12(2) of the Act, Section l0(b) of the Exchange Act and §1707.41 Ohio Revised Code with respect to certificates purchased by investors after receiving such revised Offering Circular. For purposes of the preceding sentence, the term "sufficient" means that, in the case of any claim against Fair Finance challenging the sufficiency of the disclosures by Fair Finance with respect to the loans to Holdings, Fair Finance should prevail as to such claim assuming the presentation of a competent defense and the exhaustion of all available appeals.

Thus, far from opining that the disclosures "comply with Ohio law," the lawyers indicated that they could *not* opine that the disclosures comply with the sufficiency requirements of Section 12(2) of the Act, Section l0(b) of the Exchange Act and §1707.41 Ohio Revised Code. Thus, this argument does not assist Textron.

Textron next argues that the conspiracy claim is at odds with the Trustee's own allegations that Fair Finance lied to Textron. But the SAC is replete with allegations that Textron discovered that Durham was using the V-Note program as a "piggy bank" and that Textron knew of the practice. The Trustee alleges that Textron knew that Fair Finance could not survive without funding from the V-Note offerings. At the same time, the insider loan balances skyrocketed and, again, the Trustee alleges that Textron knew of this fact. Nonetheless, Textron and Durham agreed to waive disclosure requirements under the loan so as not to upset the market and further agreed to issue unaudited financial statements. The fact that the Trustee alleges that Fair Finance may have lied to Textron at times, does not undercut the remainder of the Trustee's allegations, which assert specific facts showing that Textron possessed knowledge. This is

10

simply not a situation in which the complaint's own allegations foreclose the claim at issue.

For these reasons, the Bankruptcy Court's recommendation that the Court deny Textron's motion to dismiss the civil conspiracy claim is ACCEPTED.[3]

Next Textron argues that Bankruptcy Court erred in recommending that the Court decline to rule as a matter of law on certain aspects of the damages sought by the Trustee. According to Textron, the Trustee alleges that each payment made by Fair Finance amounts to a separate fraudulent transfer under Ohio's UFTA. The Trustee claims that this damages calculation is incorrect as a matter of law and that Textron's liability under this claim is limited to $17.5 million, which is the total amount of Fair Finance's assets outstanding at any one time. In other words, although Textron repeatedly re-advanced funds to Fair Finance under the revolving line of credit, Fair Finance made payments back to Textron such that when additional funds were advanced, the money was essentially "swapped out" and no new transfer occurred. Rather, the only "transfer" occurred at the time the parties signed the documents and entered into the loan agreement in the first place. As such, the Trustee should not be able to recover more than $17.5 million, and certainly not the over $300 million it seeks.

In response, the Trustee argues that this issue was previously decided by the Sixth Circuit. The Trustee notes that the Sixth Circuit held as follows:

[W]e hold that the Trustee has sufficiently stated a plausible claim for relief under the

---

[3] The Sixth Circuit, albeit in *dicta*, interpreted nearly identical allegations to mean that Textron "not only turned a blind eye to Durham and Cochran's fraudulent behavior, but *actually assisted* the two Indiana businessmen in looting the Debtor and transforming its once profitable factoring operation into a front for a Ponzi scheme." *In re Fair Finance*, 834 F.3d 651 (6th Cir. 2016)(emphasis added).

11

> Ohio UFTA. The Trustee pled facts that, taken as true, demonstrate that...*all payments* made by [Fair Finance] in accordance with its obligations under the [revolving line of credit] *amount to fraudulent transfers* under the Ohio UFTA because each transaction was undertaken in an effort to perpetuate a Ponzi scheme that inevitably collapsed....

Based on this language, the Trustee claims that the Sixth Circuit has already determined that each transfer made by Fair Finance can form the basis of a fraudulent transfer claim. As such, liability on this claim is not limited to the $17.5 million line of credit. The Trustee also argues that in another case the Sixth Circuit recently reaffirmed this position. There, the court held that "the Trustee may recover from [the lender] all direct loan repayments, of which [the lender] is the initial transferee, because [the lender] received them after its proven good faith ended on April 30,2004." *Meloi v. Huntington Nat'l Bank*, 848 F.3d 716, 735 (6th Cir. 2017). The Trustee notes that the bankruptcy court opinion makes clear that the loan at issue involved a revolving line of credit. *See, In re Teleservices Grp., Inc.*, 444 B.R. 767, 775 (Bnkr. W.D. Mich. 2011)(noting that the loan at issue was a "a typical commercial loan, with a revolving line of credit based upon...receivables...[and]...Huntington had intended to monitor those receivables through a lockbox"). Thus, the Trustee claims that even if the "law of the case" doctrine does not apply, the Sixth Circuit has concluded that all transfers made in repayment of a revolving line of credit can constitute fraudulent transfers and Textron's liability is not limited to $17.5 million.

Upon review, the Court ACCEPTS the Bankruptcy Court's recommendation that the Court defer ruling on this issue. Although the Court acknowledges that it is not wholly precluded from addressing this issue now, the Court finds that in large part it would serve no useful purpose. Textron asks the Court to address a difficult damages issue that applies to only one claim in this case. Here, even if the damages were limited with respect to the Trustee's

12

fraudulent transfer claims, it does not appear that any such comparable limited would apply with respect to the civil conspiracy claim. As such, the Court finds that ruling solely on the damages aspect of one claim would not advance the case and would be tantamount to an advisory opinion. This is especially so given that the Sixth Circuit appears to have twice now generally indicated that fraudulent transfer claims may not be limited to the amount of a revolving line of credit and, instead may include the value of all such transfers. Accordingly, the Court declines to rule as to the measure of damages available with respect to the Trustee's fraudulent transfer claim.

2. The Trustee's objection

The Trustee filed a limited objection to the R&R. The Trustee objects to the R&R to the extent it recommends that the law of the case doctrine prevents the Trustee from seeking punitive damages with respect to the fraudulent transfer claims. Textron responds that this Court previously decided this very issue and, as such, the R&R correctly concludes that the doctrine bars the Trustee from seeking punitive damages. The Trustee appears to recognize that the Court previously decided this issue, but seeks to "preserve this issue for appeal, if necessary." The Trustee offers no reason justifying this Court's reconsideration of its earlier decision and, for those reasons, the Court finds that punitive damages are not available with respect to the fraudulent transfer claims. The R&R is ACCEPTED.

**CONCLUSION**

For the foregoing reasons, the Court ACCEPTS the R&R's recommendation that defendant's motion to dismiss be denied. The Court further ACCEPTS the recommendations regarding damages. As such, the Court will not reach Textron's damages argument with regard to Ohio's UFTA, but holds that the Trustee may not recover punitive damages.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/30/17