**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Textron Financial, Inc., | ) | CASE NO. 5:12 CV 987 |
| | ) | |
| Movant, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Brian A. Bash, Trustee, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Respondent. | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant's Motion for Partial Summary Judgment (Doc. 332). This adversary proceeding stems from the bankruptcy of Fair Finance. For the reasons that follow, the motion is DENIED because the Court does not find it to be the appropriate vehicle to address the issue of setoff. Although the Court recognizes that other courts have done so, given the unique posture of, and evidence in, this case, the Court finds it more suitable to address the imposition of a setoff after the jury verdict. However, due to the importance of this issue, and in fairness to the parties involved, the Court will thoroughly address the arguments presented.

1

**FACTS**

The facts of this case have been set forth repeatedly in other Orders and only those limited facts necessary for a resolution of the instant motion are set forth herein.

Plaintiff is the Chapter 7 Trustee appointed for Fair Finance Company ("Fair Finance" or "Debtor"). Fair Finance filed a Chapter 7 petition in bankruptcy court. The Trustee filed various adversary proceedings, including the instant case filed against defendants, Textron Financial Corporation ("Textron"), Fortress Credit Corporation ("Fortress"), and Fair Facility, LLC ("Fair Finance SPE"). Textron is the sole remaining defendant.

On January 7, 2002, Textron and another lender, United Bank (later known as Unizan), entered into a loan and security agreement (the "2002 Agreement") with the Debtor and FHI. The 2002 Agreement created a revolving line of credit on which the Debtor could draw up to $22 million. Under the 2002 Agreement, Textron was granted a security interest in all of the present and future assets of the Debtor and FHI. The Trustee does not seek damages as a result of the security agreement or any payments made up until January 6, 2004.

On January 6, 2004, Textron, the Debtor, and FHI executed the First Amended and Restated Loan and Security Agreement (the "2004 Agreement"). Under the express terms of the 2004 Agreement, the total amount available to be borrowed at any one time was reduced from $22 million to $17.5 million. Unizan is not a party to the 2004 Agreement. The 2004 Agreement operated as a line of credit, pursuant to which the Debtor made hundreds of draws. In other words, the Debtor would borrow money from Textron and pay Textron back on a fairly continuous basis. In total, it appears that the Debtor received and repaid advances totaling approximately $316 million. At no point, however, could the total amount outstanding exceed

$17.5 million. Each advance was referred to as a "Loan" under the 2004 Agreement. Before advancing funds, Textron retained the right to ensure that the Debtor was in compliance with all covenants set forth in the 2004 Agreement. The 2004 Agreement further provided that the Debtor provide to Textron "no less than weekly and upon every request by [Textron], a Borrowing Base Certificate identifying the specific receivables available to secure the advances." It is the transfers made by the Debtor to Textron pursuant to the 2004 Agreement that are the subject of this motion.

This Court previously granted Textron's motion to dismiss the Trustee's claims. That order was affirmed in part and reversed in part. On remand, the Trustee filed a number of claims. The sole remaining substantive claim is for actual fraudulent transfer under the Ohio Uniform Fraudulent Transfer Act, asserted pursuant to 11 U.S.C. § 544.

Textron moves for summary judgment on the issue of damages and the Trustee opposes the motion.

**STANDARD OF REVIEW**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**ANALYSIS**

The present dispute centers on the damages calculation should the Trustee succeed on the merits of the actual fraudulent transfer claim. According to Textron, the total amount of damages cannot exceed $17.5 million plus interest and fees. On the other hand, the Trustee

argues that each and every repayment of money from Debtor to Textron constitutes an avoidable transfer for which recovery is warranted. Thus, the Trustee claims that the total amount of damages equals $316 million.

In this adversary proceeding, the Trustee seeks to avoid and recover the transfers made by the Debtor pursuant to the 2004 Agreement. The Trustee asserts this claim pursuant to the UFTA through 11 U.S.C. § 544, which provides that a trustee may avoid any transfer that is voidable under "applicable law." *See*, 11 U.S.C. § 544(b)(1)("...the trustee...may avoid any transfer of an interest in the debtor that is voidable under applicable law..."). The UFTA, in turn, provides as follows:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation....(w)ith actual intent to hinder, delay, or defraud any creditor of the debtor.

O.R.C. § 1336.04(A)(1).

The UFTA, however, further provides that "a transfer is not fraudulent under division (A)(1) of Section 1136.04 of the Revised Code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Thus, to the extent a transferee takes a transfer (1) "in good faith" and (2) for reasonably equivalent value, the transfer is not fraudulent under the UFTA and, therefore, not avoidable under Section 544(b)(1) of the bankruptcy code.

In the event, however, that the Trustee establishes a violation of the UFTA, the federal bankruptcy code allows the Trustee to "avoid" the transfer. Avoidance of the transfer, however, does not equate with "recovery." Whether a trustee may recover for an avoided transfer is

5

dependent on 11 U.S.C. § 550.

That provision provides as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from–

> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
>
> (2) any immediate or mediate good faith transferee of such transferee.

***

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

With this statutory framework in mind, the Court turns to the parties' specific arguments. In essence, Textron argues that plaintiff's damages are limited to $17.5 million plus interest and fees. According to Textron, the payments made by the Debtor to Textron do not constitute "transfers." Alternatively, Textron argues that even if the payments made by the Debtor under the 2004 Agreement are avoidable transfers, recovery should be limited by the amounts it re-advanced pre-petition. Otherwise, according to Textron, the Debtor will receive a windfall.

In response, the Trustee argues that the payments made by Textron easily satisfy the statute's definition of "transfer." The Trustee further argues that a simple setoff is inappropriate. According to the Trustee, allowing a setoff would essentially read an element out of Ohio's

6

Uniform Fraudulent Transfer Act ("UFTA"). The statute requires both an exchange of "reasonably equivalent value" *and* "good faith." Here, the Court must presume for purposes of this motion that Textron did not act in good faith. As such, it should be not entitled to a setoff, equitable or otherwise.

Assuming a jury finds the payments to be avoidable transfers, the Court finds that a $316 million recovery under Section 550 is not necessarily warranted. Textron argues that even if the Trustee can avoid the transfer, recovery under either Section 550 or 11 U.S.C. § 105(a) is not proper. According to Textron, Section 550(d) limits a trustee's recovery to a "single satisfaction." Textron claims that to allow the Debtor to retain the funds it advanced *and* allow the Trustee to "reclaim" the monies the Debtor paid to Textron would amount to a double recovery. As such, Textron essentially asks the Court for a "setoff." In response, the Trustee argues that there is no statutory basis for the "setoff" Textron seeks. Any right to a "setoff" would nullify the "for value" and "good faith" requirements set forth in the UFTA and bankruptcy code Section 548(c). In addition, the Trustee claims that the "single satisfaction" rule prevents the Trustee from recovering the same transfer from two different parties. It does not, as Textron urges, create a right to a setoff.

Upon review, the Court agrees with Textron. As an initial matter, the Court rejects the Trustee's argument that a limitation on the ability to recover under Section 550 is inconsistent with the "good faith" requirements contained in the UFTA and Section 548(c) of the bankruptcy code. These "good faith" requirements relate to whether the Trustee can *avoid* a transfer. But, it is well-settled that avoidance and recovery are entirely separate and distinct concepts. *See, e.g., In re Burns*, 322 F.3d 421, 427 (6th Cir. 2003)(noting that avoidance and recovery are distinct

and denying recovery where avoidance of mortgage made the estate whole). Thus, just because a transfer is avoided does not mean that the Trustee can recover for the avoided transfer. Notably, Section 550(a) contains no language addressing an initial transferee's good faith. In fact, the recovery provision does not afford an initial transferee a good faith defense in any event. *Compare*, Section 550(a)(1) *with* Section 550(b). Thus, while Textron's lack of good faith may prevent it from defending against an avoidance claim, it does not automatically equate to *recovery* on behalf of the Trustee. Moreover, as noted by Textron, reliance on the good faith defense under either the UFTA or Section 548(c) would provide a *complete* defense to Textron and prevent recovery altogether because the transfer could not be avoided by the Trustee. As such, the Court does not find that Textron's lack of a good faith defense to avoidance is inconsistent with its ability to ask for a setoff under Section 550.

Section 550(a) provides that the Trustee *may* recover the property (or value thereof) from the initial transferee. Section 550(d), however, limits the Trustee to a "single satisfaction" under subsection (a). Typically, courts have interpreted this provision to mean that the Trustee may only recover the amount of the transfer from one transferee. *In re Patts*, 470 B.R. 234, 243 (Bankr. Mass 2012). In other words, if a debtor fraudulently transfers $100 to entity A, and entity A transfers the same $100 to entity B, the Trustee can recover $100 from either entity A or entity B, but not both. "While section 550(d) is typically implicated in situations where a trustee seeks recovery from multiple parties, this provision has also been used to prohibit a trustee from recovering under section 550(a) from a transferee that has already returned to the state that which was taken in violation of the Code." *In re Patts*, 470 B.R. at 243. This is to prevent the Trustee from receiving a "windfall." The Court recognizes that the purpose of the

8

recovery provision is to ensure that there is no depletion of the estate's assets. *See, Malemed v. Lake County Nat. Bank*, 727 F.2d. 1399 (6th Cir. 1984).

Upon review, the Court finds that limiting the Trustee's recovery to $17.5 million plus interest and fees is, in all likelihood, equitable under the facts of this case and will prevent the estate from receiving a windfall. Here, although Textron lent the Debtor a total of $316 million over time, future advances were dependent upon the outstanding debt being reduced below $17.5 million before credit would be extended. Thus, to the extent the Debtor made a payment on the loan, Textron "returned" that money to the Debtor as a subsequent advance. As such, the bankruptcy estate's assets were never depleted by $316 million. At most, other creditors were denied access to $17.5 million plus interest and fees. Otherwise, the estate would receive a windfall because it would have obtained the funds twice–once when Textron returned the funds in the form of advances and again in this litigation. The Court finds that this would likely be tantamount to a double satisfaction, a result expressly prohibited by Section 550(d).

This is so regardless of Textron's lack of good faith. In *In re Kingsley*, 2007 WL 1491188 (Bankr. S. D. Fla. 2007), the debtors transferred funds to the defendant. The defendant in turn returned some of the money to the debtors and used some of the funds to pay off other creditors of the debtors. It was undisputed that the defendant participated in the scheme to defraud the creditors of the debtors. The court held that there was "no exception for repayment of a fraudulent transfer" and, as such, the transfer was subject to avoidance. Even so, the court held that the trustee could not recover the fraudulent transfer from the defendant:

> The Court agrees that, [because the defendant knew of the fraud], the equitable considerations underlying *Sawan* are absent here. However, the issue of windfall to the estate remains. The Trustee possesses the power to avoid fraudulent transfers in order to prevent the depletion of the estate, to promote an equitable distribution of the debtor's

9

assets, and to protect creditors who advanced credit in ignorance of the fraud. However, to the extent that the fraudulent transfer is repaid prepetition, the claim is satisfied.

*In re Kingsley*, 2007 WL 1491188 at * 4 (Bankr. S. D. Fla. 2007). Thus, a trustee "may not recover sums that were repaid to the [d]ebtor[] or to the creditors on the debtor['s] behalf. Under these facts, avoidance and recovery would result in a windfall to the estate not contemplated by the [bankruptcy code or the UFTA]." *Id*. at *6.

The Eleventh Circuit affirmed. Although noting that some authority existed to support a finding that as setoff should not be allowed, the court noted that the "cornerstone of the bankruptcy courts has always been the doing of equity." *In re Kingsley*, 518 F.3d 874, 877 (11th Cir. 2008)(citation omitted). Applying an abuse of discretion standard, the court affirmed the bankruptcy court's decision:

> ...[T]he bankruptcy court...determined that recovery of the pre-petition transfers would result in an inequitable windfall to the bankruptcy estate. However, unlike the defendant-transferee in the previous case, here, the bankruptcy court explicitly found that [the transferee] committed actual fraud. We have noted that the equitable doctrine of unclean hands provides that one who has acted in bad faith, resorted to trickery and deception, or been guilty of fraud, injustice or unfairness will appeal in vain to a court of conscience. Nevertheless, the bankruptcy court's decision was not entirely inconsistent with this doctrine. Although the court's decision did benefit [the transferee] to the extent that it found that he was not liable for any pre-petition payments, it did not bar recovery altogether, finding that he is liable for post-petition payments. Moreover, in light of the cases discussed above, the bankruptcy court did not misapply the law or make a clear error of judgment in reducing the amount of recovery to the bankruptcy estate. Accordingly, the bankruptcy court did not abuse its discretion.

*In re Kinglsey*, 518 F.3d at 878.

Here, the Court finds that an inequitable windfall might occur should the Court allow the Trustee to recover for each separate transfer without considering the nature and substance of a credit facility. As Textron notes, the total money unavailable to the creditors never exceeded $17.5 million. Moreover, Textron would never have lent the Debtor $316 million. Rather, the

10

parties' arrangement was wholly dependent on the Debtor's repayment of funds. Absent the repayments (and thus, a reduction in the outstanding debt), Textron certainly would not have provided the Debtor with the total amount the Trustee seeks. In other words, based on the structure of the loan itself, at no point was $316 million unavailable to other creditors.[1] *See, In re Cybridge Corp.*, 312 B.R. 262 (D.N.J. 2004)(although defendant received approximately $167,000 in avoidable postpetition receivables, defendant then transferred approximately $192,000 in the form of new loans and was entitled to a setoff in this amount). *In re Incare*, LLC, 2018 WL 2121799 at *16 (Bankr. E.D. Pa. May 7,2018)(in case of actual fraudulent transfer, essentially all transferred funds were returned to the debtor and, as such, there as no diminution in estate and recovery under Section 550 is not warranted); *In re Patts*, 470 B.R. 234 (Bankr. D. Mass. 2012)(in order to avoid a windfall to the estate, no recovery under 550(d) where property transferred from debtor to spouse was returned to debtor); *In re Pearlman*, 515 B.R. 887, 896 (Bankr. MD. Fla 2014)(Section 550(d) prevents a trustee from obtaining "*both* the repayment of the transfer *and* [a] separate judgment against the transferee"). Moreover, like the court in *In re Kingsley*, this Court would not be prohibiting recovery altogether. Rather, the Trustee would be able to recover for avoided transfers totaling $17.5 million plus interest and fees.

These holdings are consistent with the general purpose of the bankruptcy code. Bankruptcy statutes are remedial in nature and are not designed to punish wrongdoers. *Id*. Other claims, including claims for civil conspiracy, exist for this purpose. But, in this case, those

---

[1] The Trustee argues that Textron is asking the Court to treat the parties' relationship as a $17.5 million term loan. But, the Trustee is asking that the Court treat it as a $316 million term loan.

11

claims are no longer before the Court. "The fact that a bankruptcy proceeding is equitable does not give the judge free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness." *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 791 F.2d 524, 528 (7th Cir. 1986). Here, allowing the Trustee to recover $316 million when most of that money was already part of the bankruptcy estate on the date the estate was created may create a windfall to the estate.[2] This is so even though the Trustee alleges that Textron knew the Debtor was operated as a Ponzi scheme. The Court should not refuse to apply equitable bankruptcy principles at will simply to punish Textron for its actions.

Other courts have reached the similar results *via* different avenues. Some have concluded that when a "transfer" is "returned" to the estate, no transfer occurs. *See, e.g., In re Model Imperial, Inc.*, 250 B.R. 776 (Bankr. S.D. Fla. 2000)(netting out the amounts repaid with "simultaneous or immediate" readvance and concluding that the "alleged fraudulent transfers are not avoidable because in economic reality, they were a nullity"); *In re Top Sport Distributors*, Inc., 41 B.R. 235, 239 (Bankr. S.D. Fla. 1984)(the net effect of redepositing loan proceeds into debtor's account "was that the funds never left the corporation"). Others rely on general equitable principles. This Court finds that the setoff issue is better addressed through Section 550(d), with an understanding that bankruptcy courts are courts of equity. Thus, although the Court recognizes that Textron acted in bad faith, Textron's bad faith is not the end of the

---

[2] As Textron notes, its liability with respect to the credit facility could be virtually endless depending on the cycle of extensions and repayments. Had the Debtor transferred $2 million to Textron each day, with Textron advancing $2 million five minutes later, at the end of a two-year period, the amount of transfers made by the Debtor would total nearly $1.5 billion even though that amount was never "missing" from the estate, *i.e.*, unavailable to creditors.

analysis. Rather, Section 550(d) nonetheless prevents the Trustee from recovering multiple satisfactions, which would create a windfall to the estate. This is especially so here when the Trustee seeks to recover eighteen times the credit limit applicable to the parties' transaction.

The Court finds that the cases relied on by the Trustee are distinguishable. In *Bank of America, N.A. v. Veluchamy*, 535 B.R. 783 (N.D. Ill. 2015), the court addressed whether a setoff under Section 550(d) should be permitted for monies paid by defendant-transferees in exchange for stock fraudulently transferred by the debtor. The defendants argued that, by failing to credit the amount they paid for the stock, the estate received a double recovery under Section 550(d). The court disagreed and concluded that the transferees' fraud prohibits a setoff. But, *Veluchamy* is not on point because it does not involve a series of transfers of essentially the same asset. In *Veluchamy*, the court was faced with one discrete transfer and asked whether a setoff is appropriate for the consideration provided for that transfer. Here, however, the parties essentially engaged in a series of transfers of essentially the same asset. This is would be equivalent to the transferees in *Veluchamy* re-transferring the stock to the debtor and the debtor re-transferring the stock back to the transferees on a regular basis. *Veuchamy* simply did not address this issue. The same holds true for the remaining cases relied on by the Trustee. *See, e.g., In re Straightline Investments, Inc.*, 525 F.3d 870 (9th Cir. 2008)(no setoff for consideration paid to acquire fraudulently transferred asset, but no discussion regarding multiple transfers of the same or similar assets); *Boyer v. Crown Stock Distribution, Inc.*, 2009 WL 418275 (N.D. Ind. Feb. 17, 2009), *aff'd in part, rev'd in part on other grounds*, 587 F.3d 787 (7th Cir. 2009)(same). Moreover, the Court is not ignoring Textron's fraud and absolving it of liability. Rather, Textron acknowledges that it may be liable for $17.5 million, *i.e.*, the maximum amount

13

available at any one time under the credit facility, plus interest and fees. But to allow recovery for each instance of loan payment after a re-transfer would constitute a multiple recovery of this amount many times over.

The Trustee heavily relies *Meoli v. Huntington National Bank*, 848 F.3d 716 (6th Cir. 2017). There, the Sixth Circuit held that all direct (and some indirect) repayments made by the debtor to defendant amounted to fraudulent transfers. The debtor made payments to Huntington Bank in an effort to pay down a debt Cyberco owed to Huntington. The court went on to hold:

> Because Huntington Bank's proven good faith ceased on April 30, 2004, Huntington is liable for all [debtor] transfers after that date on which it is the transferee. The Trustee may recover all direct loan repayments, of which Huntington is an initial transferee, because Huntington received them all after April 30, 2004.

*Id*. at 731. But, as with the other cases cited by the Trustee, there were no re-transfers made after Huntington Bank's bad faith. Thus, *Meoli* does not address the issue before the Court– namely, whether pursuant to Section 550(d), an improper multiple satisfaction would occur if a setoff was not provided for monies returned directly to the debtor by the transferee.[3]

Here, the Court finds that treating a $17.5 million credit facility as a $316 million term loan would likely elevate form over substance. Advancement of additional funds was entirely dependent upon the Debtor paying down the line of credit. As such, the Court finds that the an

---

[3] The bankruptcy court in the case underlying *Meloi*, *i.e., In re Teleservices Group, Inc.*, 469 B.R. 713 (Bankr. W.D. Mich. 2012) issued an opinion analyzing the right to a setoff under Section 550. After a thorough analysis, it largely rejected the rationale set forth in *Kingsley* that setoffs are appropriate even in instances of actual fraud. But, as noted by Textron, that portion of the opinion was largely mooted by the Sixth Circuit's determination that the transfers that were not the subject of the setoff request were deemed not "transfers" to Huntington. As such, the Sixth Circuit had no reason to address the holding in *Teleservices*.

14

equitable setoff may be warranted in order to limit the liability on the Trustee's fraudulent transfer claim to $17.5 million plus interest and fees. This is exclusive of pre- and post-judgment interest.

The Court finds, however, that summary judgment on the "setoff" issue should not be entered at this time. As defendant acknowledges, the ability to impose a setoff stems, in part, from the Court's equitable powers. (Doc. 332-1 at n.7). Damages, however, is generally an issue for the jury. *See, e.g.*, *In re National Consumer Mortgage*, LLC, 2014 WL 1873960 (D. Nev. May 8, 2014)(jury returned verdict on damages issue, after which court addressed setoff under Section 550(d)). This Court believes the best way to address the conflux of the legal and equitable issues relating to damages is to allow the jury to address damages, after which the Court will address the necessity of a setoff, if necessary.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment (Doc. 332) is DENIED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 7/22/19